BUNDY, as Receiver, etc., *v.* JACKSON.

(*Circuit Court, E. D. Arkansas.* August 10, 1885.)

1. PROMISSORY NOTE—LIABILITY OF INDORSER WHERE MAKER IS FICTITIOUS PERSON.

The payee and indorser of a negotiable promissory note is liable as maker, where he knows the maker is a fictitious person; and if he were to be regarded as an indorser, he would be liable on his indorsement without demand or notice.

2. NATIONAL BANK—SALE BY BANK OF ITS OWN STOCK—PURCHASE BY OFFICERS OF BANK—ESTOPPEL.

The sale which section 5201, Rev. St., requires a national bank to make of its own stock, is real and not fictitious. And where the president and cashier of a national bank, which is the owner of some of its own stock, purchase such stock, and execute their note to the bank for the purchase money, in a suit against them on the note, by the receiver of such bank, they are estopped to set up as a defense that their purchase of the stock was unauthorized, or that their purchase was merely colorable, or to avoid a forfeiture of the bank's charter, or for any other deceptive or illegal purpose.

3. SAME—PURCHASE AND SALE OF STOCK BY PRESIDENT—RATIFICATION.

The sale by the president of a national bank, to himself and the cashier, of the stock of the bank, owned by the bank, may be ratified by the bank or its legal representative; but a sale by himself to the bank, of its own stock, where he acts in the double capacity of seller and buyer, cannot be ratified when the purchase of the stock by the bank is not necessary to prevent loss upon a debt previously contracted. In the one case the sale of the stock is enjoined by

law, and its sale by the president may be ratified, however irregular it may have been in the first instance; but the purchase of its own stock by the bank is interdicted by law, and for this act there can be no authorization in advance, and no ratification afterwards.

At Law.

The plaintiff is receiver of the Hot Springs National Bank, appointed by the comptroller of the currency. This suit is on a note, the facts relating to which are as follows: The Hot Springs National Bank owned $500 of its own stock, which was "laid on the counter and counted as $550 cash" and carried on the books as that much cash. On the second of January, 1884, Andrew Bruon and the defendant, R. E. Jackson, then the president and the cashier, respectively, of the bank, on the suggestion of Bruon, and for the purpose, as he said, of taking the stock out of the list of cash items of the bank, signed the name of a fictitious person, as maker, to a negotiable promissory note, due in 90 days, for $550, payable to their own order, and indorsed this note to the bank. In consideration for their note they took from the bank, and placed to their own account, the $500 of stock, which they duly transferred to themselves on the books of the bank. How the bank acquired this stock, and how long it had belonged to the bank, is not shown; but it had evidently belonged to the bank several months. The note was renewed one or more times. About the time the bank closed its doors, Bruon and Jackson transferred the stock back to the bank, and destroyed their note,—the note here sued on. The stock of the bank is worthless. There is no evidence tending to show the directors had any knowledge of this transaction.

*U. M. & G. B. Rose*, for plaintiff.

*John McClure*, for defendant.

CALDWELL, J. The payee and indorser of a promissory note is liable as maker, where he knows the maker is a fictitious person; and if he were to be regarded as an indorser, he would be liable on his indorsement without demand or notice. 1 Pars. Bills & Notes, 559, 560. Section 5201, Rev. St., reads as follows:

"No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; or, in default thereof, a receiver may be appointed to close up the business of the association, according to section fifty-two hundred and thirty-four."

The bank having in some way become the owner of this stock, it was required within six months from the date of its purchase to sell it, on pain of having a receiver appointed to close up the business of the bank. It is obvious the president of the bank had this clause of the act in view when this transaction took place, and that the execution of the note, and the transfer of the stock from the bank to Bruon and Jackson was a scheme to escape the penalty for a longer ownership

of the stock by the bank. The sale which the law requires the bank shall make of its own stock is a real sale and not a fictitious one. The president and cashier, it is true, could not make a sale of the stock to themselves that would bind the bank; but the directors might have sold them the stock; and when the bank, or its representative, elects to ratify the sale they made to themselves, Bruon and Jackson will not be heard to set up their own illegal or unauthorized act to avoid their contract. Nor will they be permitted to allege the sale and purchase was merely colorable, or to avoid a forfeiture of the bank's charter, or for any other deceptive or illegal purpose. Bigelow, Estop. 513. "The receiver is the statutory assignee of the association," (*Kennedy* v. *Gibson*, 8 Wall. 498, 506,) and, as such, possesses all the powers requisite to "collect all debts, dues, and claims belonging to it," and which the directors of the bank could have asserted and collected if no receiver had been appointed. The receiver may therefore treat the purchase of the stock by Bruon and Jackson as valid, and he elected to do so within a reasonable time after the facts came to his knowledge.

The subsequent effort of Bruon and the defendant to relieve themselves from liability, by transferring the stock back to the bank and tearing up their note, was futile. The statute declares the bank shall not purchase its own stock, unless such purchase shall be necessary to prevent loss upon a debt previously contracted. The purchase by the bank, through its president, of the stock owned by himself and the defendant was not made to prevent such a loss. The president of the bank had no power to purchase stock from strangers, or release the claims of the bank against any person. Morse, Bank. 146, 147. And, of course, he could not act in the double capacity of buyer and seller, and contract with himself for the discharge of his own obligation, and, as president of the bank, purchase stock from himself, which the bank by law was prohibited from purchasing from any one. For this act there could be no authorization in advance, and no ratification afterwards. It does not have to be formally disaffirmed by the directors or the receiver, because neither could ratify or impart validity to it if they desired to do so. The sale of the stock by the bank was enjoined upon it by law, and its sale by the president could therefore be ratified, however irregular it may have been in the first instance; but the purchase of the stock by the bank was interdicted by law, and was therefore incapable of ratification. The assets of the bank constitute a trust fund for the benefit of its creditors, and when wrongfully diverted can be followed in whosesoever hands they can be traced. The debt incurred by the defendant to the bank, by the purchase of the stock and the execution of the note, has never been paid. The destruction of the evidence of the debt did not pay the debt. The title to the stock never passed from Bruon and the defendant to the bank. The stock is theirs, and if in the possession of the bank, or the receiver, it is held in trust for them. If the acts

practiced by the president and cashier of the bank in this case can be indulged in with impunity by bank officers, then the safeguards provided by statute for the security of depositors and other creditors of the bank are blank paper.

Let judgment be entered for the plaintiff for the amount of the note and interest.